STEVEN HUMMERT #89109
Name and Prisoner/Booking Number

ARIZONA STATE PRISON COMPLEX-EYMAN-SMU I
Place of Confinement

P.O. Box 4000
Mailing Address

FLORENCE, ARIZONA 85132
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.

☒ FILED   ☐ LODGED

**Jun 12 2018**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

STEVEN HENRY HUMMERT,
(Full Name of Plaintiff)   Plaintiff,

vs.

(1) CHARLES RYAN, et al.
(Full Name of Defendant)

(2) AND OTHERS

(3) _____

(4) _____
                    Defendant(s).
☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-18-1840-PHX-ROS-DMF
(To be supplied by the Clerk)

CIVIL RIGHTS COMPLAINT
BY A PRISONER

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: ASPC-FLORENCE-SOUTH UNIT, FLORENCE

Revised 3/9/07

550/555

## DEFENDANTS

2) LANCE HETMER
3) STACEY CRABTREE
4) R. CREDIO
5) G. THOMPSON
6) A. YOUNG
7) WALKER
8) MENDOZA
9) D. REVERE
10) B. BURGESS
11) J. DOE
12) E. LAO
13) WALTER HENSLEY
14) SHANNON THIELMAN
15) STEPHEN MORRIS
16) T. VAN WINKLE
17) BEAUREGARD
18) MUNZ

B. DEFENDANTS

1. Name of first Defendant: __CHARLES RYAN__. The first Defendant is employed as: __DIRECTOR__ at __ARIZONA DEPARTMENT OF CORRECTIONS__.
   (Position and Title)              (Institution)

2. Name of second Defendant: __LANCE HETMER__ The second Defendant is employed as: __WARDEN__ at __ARIZONA STATE PRISON COMPLEX-FLORENCE__.
   (Position and Title)              (Institution)

3. Name of third Defendant: __STACEY CRABTREE__ The third Defendant is employed as: __ADMINISTRATOR__ at __OFFENDER SERVICES BUREAU__.
   (Position and Title)              (Institution)

4. Name of fourth Defendant: __R. CREDIO__. The fourth Defendant is employed as: __WARDEN__ at __ASPC - EYMAN__.
   (Position and Title)              (Institution)

(CONTINUED ON SEPARATE PAGE)
If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☐ Yes   ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## B. DEFENDANTS

5) Defendant, G. Thompson is the Warden at the Arizona Department of Corrections, Eyman Complex.

6) Defendant, A. Young is a CO4 at the Arizona Department of Corrections assigned to the Offender Services Bureau.

7) Defendant, Walker is a CO4 at the Arizona Department of Corrections assigned to the Offender Services Bureau.

8) Defendant, Mendoza is a CO4 at the Arizona Department of Corrections assigned to the Offender Services Bureau.

9) Defendant, D. Revere is a CO4 at the Arizona Department of Corrections assigned to the Offender Services Bureau.

10) Defendant, B. Burgess is a CO4 at the Arizona Department of Corrections assigned to the Eyman Complex, Rynning Unit.

11) Defendant, J. Doe is a CO4 at the Arizona Department of Corrections assigned to the Offender Services Bureau.

12) Defendant, E. Lao is a Deputy Warden at the Arizona Department of Corrections assigned to the Eyman Complex, Rynning Unit.

13) Defendant, Walter Hensley is a Deputy Warden at the Arizona Department of Corrections assigned to the Eyman Complex, Special Management Unit I.

14) Defendant, Shannon Thielman is an Associate Deputy Warden at the Arizona Department of Corrections assigned to the Eyman Complex, Rynning Unit.

15) Defendant, Stephen Morris is a Deputy Warden at the Arizona Department of Corrections assigned to the Eyman Complex.

16) Defendant, I. Van Winkle is a CO3 at the Arizona Department of Corrections assigned to the Eyman Complex, Rynning Unit.

## B. DEFENDANTS

17) DEFENDANT, BEAUREGARD IS A CO3 AT THE ARIZONA DEPARTMENT OF CORRECTIONS ASSIGNED TO THE EYMAN COMPLEX, SPECIAL MANAGEMENT UNIT I.

18) DEFENDANT, MUNZ IS A CO3 AT THE ARIZONA DEPARTMENT OF CORRECTIONS ASSIGNED TO THE EYMAN COMPLEX, RYNNING UNIT.

Each defendant is sued individually and in his official capacity. At all times mentioned in this complaint each defendant acted under color of state law.

PAGE 2-B

## D. CAUSE OF ACTION

### COUNT I

State the constitutional or other federal civil right that was violated: <ins>FIRST AMENDMENT RIGHT TO FREE SPEECH</ins>

2. Count I. Identify the issue involved. Check only one. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. Supporting Facts. State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   <ins>SEE ATTACHED PAGES 3A – 3H</ins>

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).

   <ins>SEE ATTACHED PAGES 3-A THROUGH 3-H</ins>

5. Administrative Remedies:
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

## D. CAUSE OF ACTION

### COUNT I.

3. SUPPORTING FACTS (CONTINUED) AND 4. INJURY

19) On September 18, 2013 Plaintiff was transferred from Medium custody to Close custody, a higher security level.

20) Upon information and belief, Defendant Lance Hetmer unlawfully retaliated against Plaintiff for writing a personal letter. The letter was several pages of Plaintiff venting about prison politics, conditions, and corruption. Plaintiff ended with a sarcastic expression of exasperation about needing a vacation. Defendant Hetmer wrote in the Automated Inmate Management System (AIMS) the transfer was the result of this letter. Defendant Hetmer wrote in AIMS he felt Plaintiff was referencing escape.

21) Departmental Order #914 INMATE MAIL states: "914.05 OUTGOING MAIL, 1.6 Outgoing mail that is read by staff and is determined to be detrimental to the security or safe operation of the institution or that may impede the protection of the public or facilitate criminal activity shall be referred to the Criminal Investigations Unit for further action."

22) Upon information and belief, Plaintiff's letter did not violate any rule or regulation and was never referred to the Criminal Investigations Unit for further action as required by DO#914. No investigation was conducted. No disciplinary violation was issued.

23) Upon information and belief, Defendants have misrepresented themselves and the Arizona Department of Corrections to the public by ignoring written rules and regulations. The transfer of Plaintiff to higher custody and placement therein is unlawful retaliation for a letter that violated no rule or regulation and was not referred to the

Criminal Investigations Unit and violates Plaintiff's right to free speech.

24) Plaintiff's transfer to higher custody denied access to programs and directly affected his parole prospects. On December 11, 2017 the Arizona Board of Executive Clemency denied Plaintiff parole and listed LACK OF PROGRAMMING as a reason. There are no programs in Close custody.

25) Plaintiff was enrolled in Smart Recovery and an Arizona State University sponsored language class. He was removed from these programs due to the transfer to higher custody. Close custody offers no programs. Plaintiff requested to be transferred to a custody with access to programs. He repeatedly requested enrollment in the Sex Offender Education and Treatment Program (SOETP) prior to his parole eligibility. Plaintiff's requests were denied. Defendant Burgess told Plaintiff to feel free to tell that to the parole board.

26) Upon information and belief, Plaintiff's first parole hearing on April 28, 2016 was affected by the lack of programs. The Board raised questions about Plaintiff not enrolling in SOETP. Parole was denied.

27) The transfer resulted in the loss of Plaintiff's prison job. Plaintiff was assigned as a Recreation Worker earning $21.00 per pay period. A pay period is two (2) weeks. After the transfer Plaintiff was unemployed from 09/19/13 to 04/20/14. Plaintiff suffered damages of $336.00 in lost wages over thirty-two (32) weeks or sixteen (16) pay periods.

28) The transfer to higher custody significantly affected Plaintiff's privileges, reducing visitation, recreation, allowable property, job prospects and denying access to programs.

29) Plaintiff's transfer was called a custody override. Overrides are reviewed every six (6) months and allow one (1) appeal to Offender Services Bureau after each review. No information is provided on how to remove an override or how long an override will continue. At present, Plaintiff

PAGE 3-B

has been on an override to higher custody for over 1,600 days or four and one-half (4½) years.

30) Plaintiff appealed the override. The appeal was denied by J. Doe of Offender Services Bureau (OSB) citing the letter as a reason.

31) On March 18, 2014 Plaintiff's override was reviewed. CO3 Monahan told Plaintiff the override would continue. Plaintiff appealed. No response was received.

32) Plaintiff wrote Defendant R. Credio about the override. Defendant Credio's response ignored Plaintiff's questions about the letter and affirmed the override.

33) On September 18, 2014 Plaintiff's override was reviewed. CO3 Donaldson told Plaintiff the override would continue. Plaintiff appealed. No response was received.

34) On March 18, 2015 Plaintiff's override was reviewed. CO3 Donaldson told Plaintiff the override would continue. Plaintiff appealed. No response was received.

35) On September 18, 2015 Plaintiff's override was reviewed. CO3 Donaldson told Plaintiff the override would continue. Plaintiff appealed. No response was received.

36) On January 21, 2016, two years after Plaintiff was transferred to higher custody, Defendant Burgess informed Plaintiff he was being placed in Max custody. At the time, Plaintiff had been disciplinary-free for over eight (8) years. Plaintiff's first parole hearing was only three (3) months away.

37) Upon information and belief, Plaintiff's Max Custody Placement hearing was predetermined and a sham. Defendant Burgess told Plaintiff it had already been decided. The form was filled out prior to the hearing and signed by CO3 I. VanWinkle who did not conduct the hearing and was

not present at the hearing. The form recommended Max placement for institutional needs based on the letter and Plaintiff's past record of escape over fifteen (15) years earlier. The hearing was conducted by CO4 Burgess. Plaintiff was told during the hearing Max custody was a "done deal," but he could later appeal the decision. Defendant Lao approved placement in Max custody based on the letter. Defendant Thielmen approved Max custody.

38) Department Order #801 INMATE CLASSIFICATION details the criteria for Max custody placement. Plaintiff did not meet the criteria. Plaintiff did not commit any disciplinary violation to be placed in Max custody.

39) Upon information and belief, Plaintiff's appeal of Max custody placement was lost. On 04/19/16, Plaintiff resubmitted his appeal. On 07/08/16, Defendant Stacey Crabtree replied with a generic letter upholding the Max placement for "seriousness and frequency of disciplinary violations." The response did not address any of Plaintiff's details for appealing. Plaintiff had been disciplinary-free for over nine (9) years.

40) Upon information and belief, Plaintiff's transfer to Max custody affected his parole prospects. On April 28, 2016 Plaintiff attended his first parole hearing from Max custody. The Board viewed Max placement as a negative event. Board Chairperson Ellen Kirschbaum questioned Plaintiff on his Max custody placement and alluded to Plaintiff having done something wrong. Plaintiff pointed to his clean disciplinary record for over nine (9) years. Board Chairperson Kirschbaum suggested the AIMS entry regarding the letter was the reason for Max placement. Parole was denied.

41) Plaintiff lost his prison job due to placement in Max custody. Plaintiff was working as a Laundry Porter earning $24.50 per pay period prior to the transfer to Max. Plaintiff remained unemployed from 01/22/16 to

PAGE 3-D

03/27/16. Plaintiff suffered damages of $110.25 in lost wages over nine (9) weeks or four and one-half (4½) pay periods.

42) Plaintiff's placement in Max custody and transfer to Special Management Unit I (SMU I), a supermax facility, subjected him to significant hardships outside the normal prison environment. These hardships include: denying access to programs; affecting Plaintiff's parole prospects; reduction of twelve (12) hours of contact visits to two (2) hours of non-contact visits per week; reducing outside recreation from daily two (2) hour sessions to one (1) 4-hour session per week; reduction of meals from Close custody (two hot/one cold on weekdays and two hot on weekends) to Max custody (one cold/one hot each day); denial of religious services; no fruit in the menu; no sugar served in meals; a single quarter-cup serving of vegetables once per day; reduced phone calls; reduced property allowances; and mandatory classes to reduce a prisoner's classification even though Plaintiff's score could not be lowered.

43) On July 18, 2016 Plaintiff's Max custody placement was reviewed. CO3 Cave and CO3 Hiatt recommended Plaintiff be placed in lower custody based on his behavior and disciplinary record. Defendants Walter Hensley and Stephen Morris recommended the override continue in Close custody for "gradual adjustment." Defendant Mendoza denied Max custody, but Plaintiff was placed back in Close custody on an override. No explanation was given for "gradual adjustment."

44) Upon information and belief, Plaintiff was placed back in Close custody on an override in retaliation for the letter.

45) Plaintiff appealed the override and placement back in Close custody. Defendant Revere denied the appeal and wrote Plaintiff must demonstrate "compliant behavior." No explanation or definition of "compliant

PAGE 3-E

behavior" was given. No time frame was provided for how long Plaintiff must demonstrate "compliant behavior." Plaintiff had been disciplinary-free for over ten (10) years.

46) On October 7, 2016 Plaintiff was transferred back to Close custody. Plaintiff was working as a Porter earning $10.50 per pay period prior to the transfer. Plaintiff remained unemployed from 10/8/16 to 11/10/16. Plaintiff suffered damages of $12.00 in lost wages over four (4) weeks or two (2) pay periods.

47) Upon information and belief, Plaintiff was denied access to programs. The transfer affected Plaintiff's parole prospects. On April 5, 2017 Plaintiff was denied parole.

48) On January 18, 2017 Plaintiff's override was reviewed. Defendant Munz recommended the override continue. Plaintiff appealed. No response was received.

49) On July 18, 2017 Plaintiff's override was reviewed. Defendant Munz recommended the override continue. Plaintiff appealed. No response was received.

50) On November 21, 2017 Plaintiff was transferred back to SMU I. The area of SMU I Plaintiff was placed in is being called Close custody, but maintains the same significant facility restrictions as Max custody.

51) Upon information and belief, this transfer was due to the letter. Plaintiff's restrictions include: denial of access to programs affect Plaintiff's parole prospects; reduction of contact visits to non-contact visits; denial of religious services; reduction of outside recreation from daily periods to three (3) times per week; limitations of property to allowable Max custody amounts; and reduction of meals from Close custody to Max custody amounts. Defendant Thompson approved this transfer due to

PAGE 3-F

the letter.

52) Plaintiff's transfer resulted in the loss of his prison job. Plaintiff was assigned as a Laundry Porter earning $24.50 every pay period prior to the transfer. Plaintiff was unemployed from 11/22/17 to 02/05/18. Plaintiff suffered damages of $134.75 in lost wages over ten (10) weeks or five (5) pay periods.

53) On January 18, 2018 Plaintiff's override was reviewed.

54) Upon information and belief, Defendant Beauregard recommended the override continue based on the letter. Plaintiff was told by Defendant Beauregard she didn't want to get fired and was just going with her supervisors' prior reviews.

55) Plaintiff appealed the override on 02/07/18. No response was received. On 04/12/18 and 05/09/18 Plaintiff requested the status of his appeal. Defendant Beauregard responded there was no response yet.

56) Plaintiff asked Defendant Beauregard how to remove the override. Her response was "You can not." Plaintiff asked CO4 Cortes how to remove the override. There was no response.

57) Plaintiff initiated the grievance process on 02/08/18 alleging unlawful retaliation by writing an Inmate Letter to CO4 Daniels. There was no response.

58) On 02/11/18 Plaintiff submitted form 802-11 Informal Complaint. No response was received.

59) On 03/11/18 Plaintiff submitted form 802-1 Inmate Grievance. It was returned Unprocessed by Defendant Roberts with instructions to attach the pink copy of form 802-11. The pink copy is the inmate's copy.

60) On 03/18/18 Plaintiff resubmitted form 802-1 with his pink copy of form 802-11 attached. On 03/28/18 it was returned Unprocessed by Defendant Roberts with the comment it was a Classification issue and non-grievable.

PAGE 3-G

61) On 03/31/18 Plaintiff submitted form 802-3 Inmate Grievance Appeal. No response has been received.

62) On 04/09/18 Plaintiff was removed from his job without cause.

63) Plaintiff realleges and incorporates by reference paragraphs 19-62.

64) Upon information and belief, Defendant Hetmer's use of the letter was unlawful retaliation by placing Plaintiff in higher custody indefinitely and affecting his parole prospects, removing him from his prison job, denying access to programs, reducing his privileges and violated Plaintiff's rights and constituted a free speech violation under the First Amendment to the United States Constitution. These illegal actions are causing Plaintiff injury to his First Amendment rights.

65) By witnessing Defendant Hetmer's illegal action, failing to correct that conduct, and encouraging the continuation of that misconduct, all defendants are violating Plaintiff's rights under the First Amendment to the United States Constitution.

66) Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declatory and injunctive relief which Plaintiff seeks.

## COUNT II

1. State the constitutional or other federal civil right that was violated: <u>FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS</u>

2. Count II. Identify the issue involved. Check only one. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. Supporting Facts. State as briefly as possible the FACTS supporting Count II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   <u>SEE ATTACHED PAGES 4-A THROUGH 4-B</u>

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).

   <u>SEE ATTACHED PAGES 4-A THROUGH 4-B</u>

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## D. CAUSE OF ACTION

### COUNT II

**3. SUPPORTING FACTS AND 4. INJURY**

67) Plaintiff realleges and incorporates by reference pages 3A-3H, paragraphs 19-56.

68) Defendant Hetmer's use of Plaintiff's personal letter to transfer him on 09/18/13 to higher custody indefinitely violated Plaintiff's rights and constituted a due process violation under the Fourteenth Amendment to the United States Constitution. These illegal actions are causing Plaintiff injury to his Fourteenth Amendment rights.

69) Defendants' Van Winkle and Burgess use of the letter to transfer Plaintiff to Max custody on 01/21/16 violated Plaintiff's rights and constituted a due process violation under the Fourteenth Amendment to the United States Constitution. These illegal actions are causing injury to Plaintiff's Fourteenth Amendment rights.

70) Defendants Ryan, Crabtree, Credio, Thompson, Young, Walker, Mendoza, Doe, Revere, Beauregard, and Murry use of the letter to place an override on Plaintiff have made the override reviews and appeals meaningless and a sham violating Plaintiff's rights and constituting a due process violation under the Fourteenth Amendment to the United States Constitution. These illegal actions are causing Plaintiff injury to his Fourteenth Amendment rights.

71) Defendants' Burgess, Lao, and Thompson use of the letter to transfer Plaintiff to a supermax facility on 11/21/17 under the guise it has been redesignated Close custody violated Plaintiff's rights and constituted a due process violation under the Fourteenth Amendment to the United States Constitution. These illegal actions are

PAGE 4-A

causing Plaintiff injury to his Fourteenth Amendment rights.

72) All defendants by witnessing Hetmer's illegal action and continuing to maintain the override, failing to correct the misconduct, and encouraging the continuation of the misconduct are violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. These illegal actions are causing Plaintiff injury to his Fourteenth Amendment rights.

73) Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declatory and injunctive relief which plaintiff seeks.

PAGE 4-B

E. REQUEST FOR RELIEF

State the relief you are seeking:

___SEE ATTACHED PAGE 6-A___

declare under penalty of perjury that the foregoing is true and correct.

Executed on __5 June 2018__
                DATE

_Steven H. Hummert_
SIGNATURE OF PLAINTIFF

__N/A__
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

__N/A__
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

## E. REQUEST FOR RELIEF

74) Granting Plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

75) A permanent injunction ordering all defendants to cease their illegal actions, and to remove the AIMS entry made by Defendant Hetmer that is keeping Plaintiff in higher custody and affecting Plaintiff's parole prospects, and place a new AIMS entry detailing defendants' unlawful retaliation against Plaintiff for exercising his First Amendment rights, and

76) Plaintiff seeks compensatory damages of $458.25 for lost wages occurring from Defendants' unlawful retaliation and transfer that resulted in Plaintiff losing his prison job, and

77) Plaintiff seeks nominal damages of $1.00 from Defendants, and

78) Plaintiff seeks punitive damages of $4,124.25, which is the industry standard of nine (9) times the amount of compensatory damages. Plaintiff seeks these damages against each defendant, jointly and severally.

79) Plaintiff also seeks recovery of his costs in this suit, and

80) Any additional relief this Court deems just, proper, and equitable.